UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

**AMERICAN SOCIETY FOR THE PREVENTION OF
  CRUELTY TO ANIMALS**
1755 Massachusetts Ave., N.W.
Washington, DC  20036,

**ANIMAL WELFARE INSTITUTE**
1686 34th Street, N.W.
Washington, DC  20007,

**THE FUND FOR ANIMALS**
8121 Georgia Ave., N.W., Suite 301
Silver Spring, MD  20910,

**BORN FREE USA UNITED WITH ANIMAL
  PROTECTION INSTITUTE**
1122 S Street
Sacramento, CA  95811,

**TOM RIDER**
600 East Holland Street
Washington, IL  61571,

   Plaintiffs,
vs.

**FELD ENTERTAINMENT, INC.**
8607 Westwood Center Drive
Vienna, VA  22182,

   Defendants.
_____/

6:08-mc-70-Orl-28GJK

**PLAINTIFFS' MOTION TO COMPEL CSX TRANSPORTATION, INC. TO
COMPLY WITH THIRD-PARTY SUBPOENA AND SUPPORTING MEMORANDUM**

  Plaintiffs, the American Society for the Prevention of Cruelty to Animals *et al.*, move to

compel compliance with a *subpoena duces tecum* that they served on a third party to this

litigation, CSX Transportation, Inc. ("CSX" or "CSXT").  *See* Subpoena (Exhibit A).  As

demonstrated below, because the subpoena seeks highly relevant information, and all of the information covered by the subpoena is currently subject to a protective order in the underlying litigation, there is no basis for CSX's refusal to comply with the subpoena, and, accordingly, the motion to compel should be granted.

## BACKGROUND

The underlying case arises under the Endangered Species Act, 16 U.S.C. §§ 1531 *et. seq.* Plaintiffs challenge the methods used by Ringling Brothers and Barnum & Bailey Circus ("Ringling Bros."), owned by defendant Feld Entertainment, Inc. ("FEI"), to train, control, "discipline," and otherwise handle and maintain the endangered Asian elephants that it uses in its circus. Plaintiffs allege that such methods – which include beating and striking elephants with sharp "bull hooks," whips, and other instruments, and keeping the elephants chained for long periods of time – constitute prohibited "takes" under the Endangered Species Act ("ESA"), 16 U.S.C. § 1538(a), because they "harm," "harass," and "wound" these endangered animals. *See* Complaint ¶ 96 (Exhibit B); *see also* 16 U.S.C. § 1532(19) (definition of "take"). The U.S. Court of Appeals for the D.C. Circuit long ago ruled that plaintiffs have Article III standing to pursue their claims. *ASPCA v. Ringling*, 317 F.3d 334 (D.C. Cir. 2003). Fact discovery closed on January 30, 2008, and the case is currently set for trial on October 7, 2008 in federal district court in the District of Columbia. *See* Order (Exhibit C).

The records at issue here pertain specifically to plaintiffs' chaining claim. Plaintiffs allege that Ringling Bros. "takes" all of the endangered Asian elephants in its possession in violation of section 9 of the ESA by keeping them "in chains for long periods of time, up to 20 hours a day, and longer when the elephants are traveling throughout the country" on train cars. Complaint ¶¶ 75-77. Plaintiffs assert that this chaining and confinement of the elephants for so many hours

each day "harms," "harasses," and "wounds" the elephants in violation of section 9 and the Fish and Wildlife Service's regulations – i.e., it "causes them physical injury, including foot injuries, and significantly disrupts their normal behavioral patterns, including their social relationships with other elephants and their need to walk long distances each day." *Id.* ¶ 77.

The Ringling Bros. circus spends between 48-50 weeks each year traveling throughout the United States via railroad. *See, e.g.*, Blue Unit Itinerary (Exhibit D) (schedule showing circus on the road for fifty weeks). The elephants at issue in this case are transported, along with other animals and circus crew and equipment, on the rail cars. CSX is one of several rail companies Ringling Bros. uses to secure access to the rail tracks that it uses to transport the circus. *See, e.g.*, Transportation Order (Exhibit E).

Ringling Bros.' own employees have admitted that the elephants who travel with the circus are chained on two legs at all times when they are on the train. *See, e.g.*, Deposition of Robert Ridley (Ringling Bros. elephant handler for more than 30 years) at 128 (Exhibit F). Therefore, information concerning the amount of time the elephants spend on the train is extremely relevant to plaintiffs' chaining claim.

Accordingly, on January 28, 2008, before the close of fact discovery in this case, plaintiffs served CSX with a *subpoena duces tecum* commanding it to produce and permit copying of "[a]ll records, including Transportation Orders, that relate to the use of CSXT tracks by Feld Entertainment, Inc. ("FEI") for the Ringling Brothers and Barnum & Bailey Circus "Blue Unit" during the calendar year 2007," including but not limited to:

1. All records that demonstrate or otherwise indicate when FEI planned to use, and did in fact use, CSXT tracks and the reason for each such use;

2. All records that in any way reflect when FEI departed a location using CSXT tracks, stopped on CSXT tracks, and arrived at a location using CSXT tracks; and

3. All records that in any way reflect that FEI requested permission to stop a train on CSXT tracks, whether permission was granted, the purpose for each such stop, the duration of each such stop, and what occurred during each such stop.

*See* Attachment to Subpoena, Exhibit A. The subpoena was accompanied by an attachment that contained the 2007 itinerary for the circus, as well as a cover letter from plaintiffs' lawyers that explained that because "[a]ll of the discovery that is being produced in this case is currently subject to a protective order that prohibits its disclosure to anyone other than a party to this case or an expert witness retained by a party . . . the records that are covered by the subpoena will be subject to that protective order." *See* Letter from Plaintiffs' Attorneys, Exhibit G.

By letter dated January 30, 2008, counsel for CSX objected to the subpoena on various grounds, including the cost of producing the requested records, but stated that the company "was willing to work with [plaintiffs] to reach a reasonable accommodation provided that reasonable steps to avoid imposing undue burden or expense are taken." *See* Exhibit H. Plaintiffs' counsel then conferred with counsel for CSX in an effort to reach various accommodations and to secure CSX's voluntary compliance with the subpoena.

However, those negotiations came to an abrupt end on March 27, 2008, when CSX's attorney sent a letter to plaintiffs' counsel indicating that "[a]bsent a court order," CSX would not voluntarily comply with the subpoena because he had been informed by an attorney for defendant Feld Entertainment that compliance with the subpoena would "violate" the district court's order setting a discovery cut-off date of January 30, 2008 in the underlying litigation. *See* Letter from CSX Attorney, Exhibit I, *see also id.* at 2 ("As such, CSX respectfully declines to voluntarily produce documents at this time for fear of violating the court's order"); Letter from FEI attorney to CSX attorney (Exhibit J) (advising CSX that compliance with the subpoena would constitute a

"violation of the Court's discovery cutoff").[1]

In an effort to avoid additional litigation over this matter, plaintiffs asked the Magistrate Judge handling discovery matters in the underlying litigation to clarify that CSX would not be violating that court's discovery order if it complied with the subpoena that had been served on in before the close of discovery. In response, on June 11, 2008, the Magistrate Judge issued an order declining to provide such an "advisory opinion[]," on the ground that "all power over a subpoena resides exclusively in the court which issued it." *See* Order (Exhibit K). Thus, the Magistrate Judge stated that "plaintiffs will have to move to compel compliance in the issuing court and the railroad[] will have standing to respond." *Id.* Although plaintiffs have attempted to seek compliance with the subpoena without litigation, because they have not been able to do so, and because they are now under a strict pre-trial schedule that requires them to soon identify all of the evidence they intend to rely on at the October 2008 trial of this case, plaintiffs have no choice but to move to compel.[2]

## ARGUMENT

A party is entitled to discover information "if the discovery sought appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Moreover, a party may obtain discovery regarding any matter that is relevant to either the claims or defenses in the case. *Id.* As plaintiffs have explained, *supra* at 2-3, the materials that they have subpoenaed are clearly relevant to plaintiffs' claims in the underlying lawsuit, particularly their claim that

---

[1] FEI's position on this matter was particularly disingenuous in light of the fact that it had also served a third party subpoena shortly before the discovery cutoff date, which was also outstanding as of January 30.

[2] Plaintiffs' attorneys have asked CSX to comply with the long-overdue subpoena without having to seek a court order, but to date CSX has not agreed to do so.

Ringling Bros. keeps the elephants on chains for many hours each day when the elephants are traveling on the train.

Moreover, the subpoena is not overly burdensome. It covers records for only a single year – 2007 – and the subpoenaed records, which we understand are largely maintained on computers, should be easily identified and retrieved by the company. *See, e.g., GFL Advantage Fund. v. Colkitt*, 216 F.R.D. 189, 196 (D.D.C. 2003) (recognizing that subpoena may be "overbroad" when it is "without any temporal limitation"); *U.S. v. Int'l Business Machines, Corp.*, 62 F.R.D. 507, 511-12 (S.D.N.Y. 1974); *see also Inspector General of U.S. Dep't of Agric. v. Glenn*, 122 F.3d 1007, 1009 (11th Cir. 1997) (subpoena will be enforced as long as it is not too indefinite or overly burdensome). Therefore, there should be very little burden involved in making these materials available to plaintiffs.

Furthermore, plaintiffs have informed CSX that they are willing to reimburse CSX for the cost of producing responsive records, and they have also agreed to maintain the records under a protective order. *See supra* at 4.[3] Accordingly, there should be no legitimate concern that compliance with the subpoena would in any way compromise any commercial or otherwise sensitive information. *See, e.g., In re Currency Conversion Fee Antitrust Litigation*, 2004 WL 848171, *1 (S.D.N.Y. 2004) ("American Express' concern that production of the subpoenaed documents would compromise trade secrets and other confidential information is obviated by the presence of the confidentiality agreement and protective order in this action"); *Ultradent Products v. Hayman, Inc.*, 2002 WL 31119425, (S.D. N.Y.) at *4 (confidentiality order is sufficient

---

[3] Although plaintiffs have recently moved to lift the protective order that applies to all discovery in this case, they specifically informed the Court that they are willing to keep that order in place with respect to all of the records they subpoenaed from CSX. *See* Plaintiffs' Reply To Opposition To Motion To Lift The Protective Order at 12, *ASPCA v. Ringling Bros.*, Civ. No. 03-2006 (D.D.C. June 2, 2008) (Docket No. 303) at 12.

protection against concerns that subpoenaed materials will invade individuals' personal privacy); *Staley Continental, Inc. v. Drexel Burnham Lambert, Inc.*, 1988 WL 36117, at *3 (D.D.C. 1988) (noting that "the imposition of a protective order alleviates the confidentiality concerns" asserted by the subpoenaed party); *Barington v. Mortgage IT, Inc.*, 2007 WL 4370647, at * 1, n.3 (confidentiality concerns may be addressed with a protective order) (citation omitted).

Finally, particularly because the subpoena was duly served on CSX before the close of discovery in the underlying case, there simply is no legitimate basis for CSX's concern that complying with the subpoena would require it to "violate" the Court's discovery order in the underlying litigation. Indeed, while FEI may have many reasons it does not want CSX to provide the subpoenaed records to plaintiffs, this does not relieve CSX of its obligation to comply with a duly served subpoena. Moreover, as Magistrate Facciola recently noted in declining to decide the matter, "only the party served with a subpoena has standing to move to quash it." Order at 2 (June 11, 2008) (emphasis added) (citation omitted).

Accordingly, because plaintiffs' subpoena is "reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), and plaintiffs have also agreed to pay the relevant duplication costs and to maintain the subpoenaed records pursuant to a protective order that is already in place, there simply is no legitimate basis for CSX to continue to refuse to comply with plaintiffs' subpoena. In addition, because CSX put plaintiffs in the position of having to file a motion to compel the production of records to which they are clearly entitled, CSX should be made to reimburse plaintiffs for their attorneys' fees and costs in connection with this motion. *See Ultradent Products, Inc.*, 2002 WL 31119425, at *4-5.

## CONCLUSION

For all of the foregoing reasons, CSX should be ordered to comply fully with plaintiffs'

subpoena. A proposed order is attached.

Respectfully submitted,

Katherine A. Meyer (D.C. Bar No. 244301)
kmeyer@meyerglitz.com
Kimberly D. Ockene (D.C. Bar No. 461191)
kockene@meyerglitz.com
MEYER & GLITZENSTEIN
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
Tel: 202-588-5206

Paul J. Schwiep, Florida Bar No. 823244
pschwiep@coffeyburlington.com
COFFEY BURLINGTON
2699 South Bayshore Drive, Penthouse
Miami, Florida 33133
Tel: 305-838-2900
Fax: 305-858-5261

By: _____
Paul J. Schwiep

*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 27th day of June, 2008, a copy of Plaintiffs' Motion to Compel Compliance by CSX Transportation, Inc. with Third-Party Subpoena and Supporting Memorandum, along with the accompanying exhibits and proposed order, was delivered by Federal Express to the following:

>Dominic C. MacKenzie
>donny.mackenzie@hklaw.com
>Holland & Knight LLP
>50 North Laura Street, Suite 3900
>Jacksonville, FL 32202-3622
>Tel: 904-798-7303
>Fax: 904-358-1872
>*Counsel for CSX Transportation, Inc.*
>
>John M. Simpson
>jsimpson@fulbright.com
>Lisa Zeiler Joiner
>ljoiner@fulbright.com
>Fulbright & Jaworski
>801 Pennsylvania Ave., N.W.
>Washington, DC 20004-2623
>Tel: 202-662-0200
>Fax: 202-662-4643
>*Counsel for Feld Entertainment, Inc.*

By: _____
Paul J. Schwiep